

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RTP:LZ/ADG
F. #2018R01916

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 21, 2023

By ECF

The Honorable Denny Chin
U.S. Court of Appeals for the Second Circuit
Thurgood Marshall Courthouse
40 Foley Square
New York, NY  10007

      Re:    United States v. Goldstein, et al.
              Crim. No. 21-550 (DC)

Dear Judge Chin:

      The government writes following oral argument on the defendants' joint motion for a judgment of acquittal to provide additional Second Circuit case law and analysis responsive to the Court's inquiry as to whether the trial evidence complies with McDonnell v. United States, 579 U.S. 550 (2016).

      First, not all counts of conviction need to be McDonnell-compliant.  The defendants were each convicted of substantive and conspiracy federal-program bribery in violation of 18 U.S.C. § 666, charged in Counts Three, Four, and Five of the superseding indictment.  A McDonnell-compliant official act is not an element of federal program bribery. United States v. Boyland, 862 F.3d 279, 291 (2d Cir. 2017) (concluding that the McDonnell standard does not apply to federal program bribery under 18 U.S.C. § 666 because that section is "more expansive than § 201," which the McDonnell Court was construing); United States v. Ng Lap Seng, 934 F.3d 110, 132-33 (2d Cir. 2019) ("From these textual differences among various bribery statutes, we conclude that the McDonnell 'official act' standard, derived from the quo component of bribery as defined by § 201(a)(3), does not necessarily delimit the quo components of other bribery statutes, such as § 666. . . .").

      Here, for each count, including the federal program bribery counts, the jury was instructed as to the meaning of an "official act" under McDonnell.  In applying the "official act" requirement under McDonnell to the federal program bribery counts, the government proved more than it was required to prove to convict the defendants on the federal program bribery counts.  Indeed, the same thing happened in Ng Lap Seng.  The Second Circuit held that it would have been sufficient for the district court to have charged the jury that, for section 666, "the defendant gave or agreed to give or offered something of value to the agent with the intent to influence the agent's actions in connection with some sort of business transaction of the United

Nations." Ng Lap Seng, 934 F.3d at 139.  The Second Circuit, in affirming the convictions, held that the giving of a McDonnell instruction for § 666 was harmless error, because "[w]here a jury returns a guilty verdict on instructions requiring it to find proved more than the law requires, a court can generally conclude that the jury would also have returned a guilty verdict on proper instructions omitting the unwarranted element." Id. at 139 (emphasis in original).

As in Ng Lap Seng, the trial evidence was plainly sufficient to support an inference (1) that the SOMMA defendants gave Goldstein things of value intending to influence or reward him in connection with SOMMA's business before SchoolFood, and (2) that Goldstein accepted things of value from the SOMMA defendants intending to be influenced or rewarded in connection with SOMMA's business before SchoolFood.  See 18 U.S.C. §§ 666(a)(1)(B) & (a)(2).  Accordingly, even if the government failed to prove any McDonnell-compliant official act—which the government disputes—it would not affect the defendants' convictions as to Counts Three, Four, and Five, because an official act is sufficient but not necessary to sustain convictions for federal program bribery.

As to the remaining counts, that is, Counts One, Two, Six, and Seven, the jury was correctly charged as to the meaning of an "official act" under McDonnell.  (ECF No. 157, at 24-25.)  Indeed, the defendants have not raised any legal challenges to the quid pro quo portions of the jury charge in their pending motion.  Because the jury instructions were correct, the question for the Court is whether the government offered sufficient evidence to support the jury's findings that the question or matter to be influenced was identified at the time of the quid pro quo, under McDonnell and Silver.  That in turn raises the question what was the moment in time when the quid pro quo occurred for the extortion and honest services fraud charges?

The answer to this question varies by count.  Setting aside the federal-program bribery counts leaves Counts One, Two, Six, and Seven.  Count Two is narrow in scope and time, charging Goldstein with extorting a payment from the SOMMA defendants on December 8, 2016, in exchange for Goldstein's approving SOMMA's plan to reintroduce its tenders and substitute its drumsticks.  There was ample evidence to permit a rational juror to find that the specific question or matter to be influenced—approval of SOMMA's chicken tender plan—was identified by November 29, 2016.  The quid pro quo charged in Count Two occurred on November 29, 2016 (the date the SOMMA defendants signed the separation agreement that served to transfer their shares of Range Meats Supply Co. and $66,670 to Goldstein) and on December 8, 2016 (the date when the SOMMA defendants wired $66,670 to Goldstein).  See Evans v. United States, 504 U.S. 255, 268 (1992) (the offense is completed when the public official receives a payment in return for his agreement to perform specific official acts); Silver, 948 F.3d at 556 ("[T]he relevant point in time in a quid pro quo bribery scheme is the moment at which the public official accepts the payment.") (emphasis in original).  The argument put forth by the defendants to the contrary—that the quid and the quo were unrelated—is merely arguing a competing inference that the jury clearly rejected.  See McDonnell, 579 U.S. at 572-73 ("It is up to the jury, under the facts of the case, to determine whether the public official agreed to perform an 'official act' at the time of the alleged quid pro quo.").

Counts One, Six, and Seven each allege a 21-month, ongoing bribery scheme extending from March 2015 to December 2016, during which the government proved that the SOMMA defendants offered numerous bribes, in exchange for which the defendant Goldstein

took numerous official acts. For some of those quids and quos, there was a direct exchange—two examples include, first, in January 2016 the SOMMA defendants promised a future income stream to Goldstein in exchange for Goldstein's revoking a fine on SOMMA; and second, in November/December 2016, the SOMMA defendants transferred $66,670 to Goldstein in exchange for his approval of SOMMA's chicken tender plan.

These particular quids and quos were exchanged within the broader context of Goldstein's express offer that he, as the CEO of SchoolFood, would ensure that SchoolFood purchased SOMMA's products and that SOMMA would make a significant amount of money through its business with SchoolFood ("I'm going to buy a lot of fucking chicken from you guys"), in exchange for the SOMMA defendants' investment in Range Meats ("let's do the beef"). The question or matter to be influenced was not merely that Goldstein would provide open-ended, undefined assistance to SOMMA, but rather that he would make sure that SOMMA profited as a SchoolFood vendor, including by ensuring that SOMMA's products would be expedited and that disagreements between SOMMA and SchoolFood would be resolved to SOMMA's benefit. (Superseding Indictment at ¶¶ 12-13.) This is simply not the type of "open-ended promise" that Silver rejected. 948 F.3d at 559.

There is no requirement under the law, and defendants have cited no cases, that all of the parameters of a bribery scheme be expressly and completely defined from the moment of the scheme's inception. That is not the law for any other criminal conspiratorial scheme and there is no good reason to make an exception for bribery schemes. The facts here show that the defendants had an understanding in the summer of 2015 that Goldstein would cause SchoolFood to purchase SOMMA's products and, in exchange, the SOMMA defendants would invest in the Range Meats business. This understanding was then affirmed and reaffirmed repeatedly over the course of the conspiracy. Accordingly, for the counts charging an ongoing bribery scheme, there was not just one date when the quid pro quo occurred. Rather, the numerous and varied quids proven at trial permitted the jury to find that a concrete question to be influenced could have been identified at any of several points in time.[1] As long as a specific and concrete question or matter to be influenced was identified at the moment that any of the quids were paid, that is enough to sustain the convictions under Silver.

The government's position, as stated at oral argument, is that sufficient evidence was adduced at trial to permit a rational juror to infer that the question or matter to be influenced was therefore identified as early as the summer of 2015.[2] Nevertheless, the evidence

---

[1] Indeed, using the Evans framework that a quid pro quo is complete upon payment of the bribe, the question or matter to be influenced could have been identified as of any of the following dates: October 19-21, 2015 (when the SOMMA defendants transferred $20,000 to Range Meats Supply Co., including $7,000 to Goldstein's divorce lawyer); January 22, 2016 (when defendant Iler sent the Range Meats PowerPoint presentation to Goldstein promising that Goldstein would receive money for every hamburger Range Meats sold); November 29, 2016 (when the SOMMA defendants agreed to transfer their ownership interest in Range Meats to Goldstein); and December 8, 2016 (when the $66,670 was transferred).

[2] The jury was entitled to consider, among other things, Goldstein's scope-limited position at SchoolFood, his July 2015 promise to buy a lot of chicken from the SOMMA

3

showed that the outlines of the defendants' corrupt agreement grew sharper and more clearly defined over time. Even if the Court were to find that the question or matter to be influenced was too open-ended as of the spring or summer of 2015, certainly it was sufficiently concrete and defined by January 2016, when the SOMMA defendants demanded Goldstein lift the fine while simultaneously sending him a PowerPoint presentation detailing his future earnings from Range Meats. Indeed, the trial evidence showed that by January 2016, the SOMMA defendants had made clear that Goldstein was expected to help ensure SOMMA's success at SchoolFood by resolving disagreements to SOMMA's benefit. And certainly by November and December 2016, when the SOMMA defendants asked Goldstein to approve their chicken tender plan in exchange for their execution of the separation agreement and payment to Range Meats, a specific, focused question or matter to be influenced was plainly identified. The defense concedes as much. See Tr. of Oral Argument at 10:9-15 ("The government alleges that there was some sort of overarching scheme, but then along the way there were specific exchanges. There was the 20,000 for the yogurt parfait. We don't think they've proven that beyond a reasonable doubt, but I don't think that can dispute that that would be a sufficiently specific question or matter, same with the chicken tender holds.").

Because there was more than enough evidence for a rational jury to find that all four defendants understood the specific questions or matters to be influenced at the time the various payments were made, the Court should deny the defendants' motion in its entirety and sustain the jury's convictions on all counts.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/
Robert Polemeni
Andrew D. Grubin
Laura Zuckerwise
Kaitlin McTague
Assistant U.S. Attorneys
(718) 254-7000

---

defendants, and the fact that the SOMMA Defendants initiated discussions with Goldstein about Range Meats at the same time that they were trying to get SOMMA onboarded as a SchoolFood vendor. See United States v. Biaggi, 909 F.2d 662, 683-84 (2d Cir. 1990) (jury was permitted to find that a $50,000 payment to lawyers for legal fees was a bribe because it was discussed with public official while matters were pending on which the public official's assistance was needed).