**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

v.

ERIC GOLDSTEIN,
BLAINE ILER,
MICHAEL TURLEY, and
BRIAN TWOMEY

Defendants.

Case No. 1:21-cr-00550 (DC)

**SENTENCING MEMORANDUM OF ALL DEFENDANTS REGARDING COMMON SENTENCING GUIDELINES ISSUES**

**TABLE OF CONTENTS**


INTRODUCTION ........................................................................................................1

I. The Proposed Eight-Level Enhancement Under U.S.S.G. § 2C1.1(b)(2) Should Not Apply..........................................................................................................1

A. The Government Bears the Burden of Proving the Value of Bribe Payments to Goldstein. ..........................................................................3

B. Somma Made Payments to RMSCO to Cover RMSCO Expenses, Primarily Legal Fees Owed to Law Firms That Did Legal Work for RMSCO..........................................................................................................3

C. The Government Has Not Proven That the Payments to RMSCO on October 19, 2015 and May 13, 2016 Provided $30,000 in Value to Goldstein. ........................................................................................................6

1. Somma made the payments to RMSCO, not to Goldstein..........................6

2. The government has not accounted for any offsets to RMSCO's payments to Goldstein's divorce lawyer and father...................................7

3. The October 19, 2015 and May 13, 2016 payments also should be excluded for the reasons set forth in Section II..........................................7

D. Somma Separated from RMSCO and Made a Payment Intended to Cover RMSCO's Outstanding Expenses. ..............................................................8

E. The Government Has Not Proven That the Payment to RMSCO on December 8, 2016 Provided $66,670.39 in Value to Goldstein. ............................9

1. Somma made the payment to RMSCO, not Goldstein. ..............................9

2. The government has not quantified RMSCO's payments for Goldstein's personal expenses or accounted for any offsets. ......................9

F. An Increase Under U.S.S.G. §§ 2C1.1(b)(2) & 2B1.1(b)(1) Would Substantially Overstate the Seriousness of the Offense........................................10

II. The Proposed Two-Level Enhancement Under U.S.S.G. § 2C1.1(b)(1) Should Not Apply.........................................................................................................12

A. The Government Did Not Prove, and Indeed Abandoned the Argument, that the $10,000 Payment to RMSCO on May 13, 2016 Was a Bribe to Fast-Track/Approve Somma's Chicken Tenders or Burger. ................................13

1. Somma's chicken tenders ........................................................................13

2. Somma's grass-fed burger .......................................................................14

B. The Court Did Not Instruct the Jury on an Allegation that the $20,000 Payment to RMSCO on October 19, 2015 Was a Bribe to Menu Drumsticks Twice a Month, and the Government Did Not Prove Such an Allegation.........................................................................................................15

III. The Proposed Two-Level Enhancement Under U.S.S.G. § 3C1.1 Should Not Apply to Messrs. Goldstein and Twomey..........16

CONCLUSION..........17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*McDonnell v. United States*, 579 U.S. 550 (2016)....................16

*United States v. Agudelo*, 414 F.3d 345 (2d Cir. 2005)....................17

*United States v. Corsey*, 723 F.3d 366 (2d Cir. 2013)....................10

*United States v. Dunnigan*, 507 U.S. 87 (1993)....................16

*United States v. McClatchey*, 160 F. Supp. 2d 1254 (D. Kan. 2001)....................3

*United States v. Pena*, 751 F.3d 101 (2d Cir. 2014)....................17

*United States v. Ring*, 811 F. Supp. 2d 359 (D.D.C. 2011)....................3, 6

*United States v. Rosario*, 988 F.3d 630 (2d Cir. 2021)....................17

*United States v. Seminerio*, 680 F. Supp. 2d 523 (S.D.N.Y. 2010)....................3

## STATUTE AND OTHER AUTHORITIES

18 U.S.C. § 3553(a)....................1

U.S.S.G.
§ 2B1.1....................10
§ 2B1.1(b)(1)....................10
§ 2B1.1(b)(1)(E)....................1, 3
§ 2C1.1(b)(1).................... *passim*
§ 2C1.1(b)(2).................... *passim*
§ 3C1.1....................1, 16, 17

## INTRODUCTION

Defendants Eric Goldstein, Blaine Iler, Michael Turley, and Brian Twomey, through their respective undersigned counsel, respectfully submit this Sentencing Memorandum regarding application of the United States Sentencing Guidelines to common issues in this case. All defendants join in Sections I and II regarding application of U.S.S.G. §§ 2C1.1(b)(1) & 2C1.1(b)(2). Messrs. Goldstein and Twomey join in Section III, which relates to application of U.S.S.G. § 3C1.1 to their sentencings. Each defendant will submit their own individualized Sentencing Memorandum addressing any Sentencing Guidelines issues unique to them, their personal circumstances, and the application of the 18 U.S.C. § 3553(a) factors.

### I. The Proposed Eight-Level Enhancement Under U.S.S.G. § 2C1.1(b)(2) Should Not Apply.

The Presentence Investigation Report ("PSR") proposes an eight-level enhancement under U.S.S.G. §§ 2C1.1(b)(2) & 2B1.1(b)(1)(E) based on a determination that the "value of the payment received by Goldstein was $96,670.39," the sum of the three payments from Somma Food Group LLC ("Somma") to Range Meats Supply Company, LLC ("RMSCO") on October 19, 2015 ($20,000), May 13, 2016 ($10,000), and December 8, 2016 ($66,670.39). *See, e.g.*, Twomey PSR ¶¶ 67, 93. Mr. Goldstein did not receive $96,670.39 in value because (1) Somma made the payments to RMSCO, not to Mr. Goldstein; and (2) with respect to the payments that RMSCO subsequently made to Mr. Goldstein, the government must account for offsetting amounts intended to cover services that were not corrupt.

*October 19, 2015 Payment to RMSCO.* Somma made the $20,000 payment to RMSCO, not to Mr. Goldstein. *See* DX575 at 9 (RMSCO bank records). Mr. Goldstein received only $7,000 of that payment by virtue of RMSCO's subsequent transfer to his divorce lawyer. *See id.* To prove the value to Mr. Goldstein of the $7,000 payment, the government must account for any

offsetting value Mr. Goldstein provided to RMSCO. *See* Section I.A *infra*. Mr. Goldstein received none of the remaining $13,000, with RMSCO transferring most of it ($12,588.45) to RMSCO's U.S. law firm, Shutts & Bowen LLP ("Shutts"), and the remainder staying in RMSCO's bank account or covering bank fees. *See* DX575 at 9-35 (RMSCO bank records).

*May 13, 2016 Payment to RMSCO.* Somma made the $10,000 payment to RMSCO, not to Mr. Goldstein. *See id.* at 37. Mr. Goldstein received only $3,000 of that payment by virtue of RMSCO's subsequent transfer to his father. *See id.* To prove the value to Mr. Goldstein of the $3,000 payment, the government must account for any offsetting value Mr. Goldstein provided to RMSCO. *See* Section I.A *infra*. Mr. Goldstein received none of the remaining $7,000, with RMSCO transferring most of it ($3,834.55) to RMSCO's Polish law firm, DeBenedetti Majewski ("DeBenedetti"), and the remainder staying in RMSCO's bank account, covering bank fees, or being used to purchase a flight for RMSCO business. *See* DX575 at 41-203 (RMSCO bank records).

*December 8, 2016 Payment to RMSCO.* Somma made the $66,670.39 payment to RMSCO, not to Mr. Goldstein. *See* GX903 at 4 (RMSCO bank records). The majority of that payment was intended to cover the outstanding amounts RMSCO owed to Shutts for legal services ($57,284.19), and the remainder was intended to cover Mr. Goldstein's RMSCO expenses. *See, e.g.*, GX593 at 1 (email referencing "final transfer amount to satisfy expense remaining reimbursement and full outstanding balance owed to Shutts"); DX527 (email attaching Shutts invoice); GX530 (estimated travel expenses). Even though RMSCO subsequently used some of the money for Mr. Goldstein's personal expenses, the government has not quantified that amount or accounted for any offsetting value as it must.

Although the jury must have found a *quid pro quo*, the government has not quantified the value to Mr. Goldstein for purposes of sentencing. Because the government has not proven that the value of bribe payments received by Mr. Goldstein was $96,670.39, there should not be an eight-level increase pursuant to U.S.S.G. §§ 2C1.1(b)(2) & 2B1.1(b)(1)(E).

**A. The Government Bears the Burden of Proving the Value of Bribe Payments to Goldstein.**

Section 2C1.1(b)(2) permits a sentencing enhancement based on the "value of the payment" to the bribe recipient. The government bears the burden of proving the value to the bribe recipient with "reliable and specific evidence, and it may not simply guess where such evidence is unavailable." *United States v. Ring*, 811 F. Supp. 2d 359, 380 (D.D.C. 2011) (citation omitted). In proving the value to the bribe recipient, the government must provide an offset for any portion of a payment for services that were not corrupt. *See, e.g.*, *id.* at 378, 380 (valuing bribe in the form of "little-work jobs" for Doolittle and Rudy required "subtract[ing] the fair market value of the work done by Julie Doolittle and Lisa Rudy from the payments made to them"); *United States v. Seminerio*, 680 F. Supp. 2d 523, 535 (S.D.N.Y. 2010) (including full consulting fee paid to official when "the defense has not adduced any evidence of legitimate consulting services"); *United States v. McClatchey*, 160 F. Supp. 2d 1254, 1259 (D. Kan. 2001) (calculating "value of bribe" under § 2B4.1(b)(1) by offsetting value of legitimate services provided by bribe recipients ($100,000) against total payments to bribe recipients ($150,000)).

**B. Somma Made Payments to RMSCO to Cover RMSCO Expenses, Primarily Legal Fees Owed to Law Firms That Did Legal Work for RMSCO.**

Messrs. Hershel Meisels, Goldstein, Iler, Turley, and Twomey co-founded RMSCO to pursue Mr. Meisels' idea to import beef, including from Poland. *See, e.g.*, DX51. At the outset, Somma owned 60% of RMSCO with Messrs. Meisels and Goldstein each owning 20% through their respective limited liability companies. PSR ¶ 21. The Court has ruled that the evidence

showed, in the light most favorable to the government, that "[d]uring 2015 and early 2016, RMSCO took steps to develop the beef importing idea, including taking trips to meet prospective business suppliers, meeting with regulators, and hiring lawyers." ECF 181 at 4-5.

Mr. Goldstein took the most trips to meet with prospective business suppliers and regulators. Mr. Goldstein traveled to Chile in May 2015, to Poland in June 2015, to Amsterdam in July 2015, to Poland in August 2015, and to Poland in March 2016. *See, e.g.*, GX231 (photograph of Goldstein and Twomey in Chile in May 2015); DX152 (email regarding Goldstein and Meisels' June 2015 trip to Poland); DX171 (email following up on Goldstein and Meisels' June 2015 trip to Poland); DX224 (email regarding Goldstein's July 2015 trip to Amsterdam); DX257 (email with itinerary for Goldstein and Iler's August 2015 trip to Poland); DX285 (email reporting on Goldstein's meetings during August 2015 trip to Poland); DX401 (itinerary for Goldstein's March 2016 trip to Poland). Mr. Goldstein also travelled domestically for RMSCO business, to Dallas in February 2016 and to Chicago in June 2016. *See, e.g.*, DX593 (email regarding February 2016 trip to Dallas); DX574 (emails regarding June 2016 trip to Chicago).

RMSCO did not pay a salary to Mr. Goldstein or otherwise compensate him for any of his work. *See, e.g.*, DX575 (RMSCO bank records).

As set forth above, RMSCO engaged law firms in the United States (Shutts) and in Poland (DeBenedetti) to provide legal advice regarding its prospective business. Shutts began providing legal services to RMSCO in June 2015. *See* DX218 at 1 (Shutts billing records). The lawyers at Shutts who worked on the RMSCO engagement included partner Geoffrey Travis, who quarterbacked the team, Frank Rodriguez, a "corporate/tax specialist partner," and David Rodrigues Goncalves, an associate at the firm. *See* Tr. 1748:10-1749:18 (Travis); DX740 (Shutts engagement letter); DX218 (Shutts billing records). Shutts lawyers advised on the formation and

structure of RMSCO, drafted formation documents, prepared a Company Agreement, negotiated with Polish beef suppliers, drafted agreements for those suppliers, and performed other legal services. *See, e.g.*, DX740 at 1 ("The scope of our engagement will be to form and incorporate the Company in the appropriate jurisdiction, to prepare agreements with two Polish companies securing for the Company the exclusive right to be the Polish company's sole U.S. importer of its beef products, to prepare supply/distributorship agreements for the Company and to assist with other related matters."); DX218 (Shutts billing records); Tr. 1751:23-1758:16 (Travis) (reviewing Shutts billing entries and describing work completed). DeBenedetti began performing legal services for RMSCO in March 2016, working on draft distribution contracts with prospective Polish beef suppliers. *See* DX426 (April 30, 2016 DeBenedetti invoice).

In October 2015 and May 2016, Somma made payments to RMSCO to cover some of the business expenses associated with this work, including legal fees and travel expenses. RMSCO's expenses were composed primarily of legal fees. *See* DX218 (Shutts invoice compilation); DX426 (DeBenedetti invoice).

On October 19, 2015, Somma wired $20,000 to RMSCO. *See* DX575 at 9 (RMSCO bank records). Three days later, on October 22, RMSCO wired $12,588.45 to Shutts to cover one of the outstanding invoices for legal services, and $7,000 to Mr. Goldstein's divorce lawyer in lieu of reimbursing Mr. Goldstein's travel expenses. *See id.* ("expense reimbursement"). By this time, RMSCO owed $32,603.52 to Shutts, but the smaller payment covered the first Shutts invoice. *See* DX218 at 1, 17 (Shutts billing records); GX340 (wire instructions with reference number matching first Shutts invoice).

On May 13, 2016, Somma wired $10,000 to RMSCO. *See* DX575 at 37 (RMSCO bank records). That same day, RMSCO wired $3,000 to Mr. Goldstein's father with the intent of

reimbursing Mr. Goldstein's travel expenses. *See id.* ("expenses reimbursement"). RMSCO made a $3,834.55 payment to its Polish law firm, DeBenedetti, on June 10, for work relating to draft distribution agreements with Polish beef suppliers. *See id.* at 41; DX426 (DeBenedetti invoice). On June 16, RMSCO made a payment to Delta Airlines for Mr. Goldstein's flight to Chicago to attend a Polish beef event and meet with Polish beef contacts. *See* DX575 at 41 (RMSCO bank records); DX574 (emails regarding June 2016 trip to Chicago).

**C. The Government Has Not Proven That the Payments to RMSCO on October 19, 2015 and May 13, 2016 Provided $30,000 in Value to Goldstein.**

The payments from Somma to RMSCO on October 19, 2015 and May 13, 2016 should be excluded from the § 2C1.1(b)(2) calculation for the following reasons.

**1. Somma made the payments to RMSCO, not to Goldstein.**

It is undisputed that Somma made the payments to RMSCO, not to Mr. Goldstein. It also is undisputed that RMSCO used most of the money it received from Somma to pay legal fees, including a $12,588.45 payment to Shutts on October 22, 2015, and a $3,834.55 payment to DeBenedetti on June 10, 2016. *See* DX575 at 9, 41 (RMSCO bank records). It is true that Mr. Goldstein was friends with Geoffrey Travis, a partner at Shutts, but no matter how close they might have been, the government has not proven that the payment from RMSCO to the law firm provided $12,588.45 in value to Mr. Goldstein. It provided no measurable value to Mr. Goldstein under § 2C1.1 because (a) this was a payment for services that were not corrupt, *see* Section I.A *supra* (citing cases), and (b) the payment went to the law firm. *See, e.g.*, *Ring*, 811 F. Supp. 2d at 380 (stating that in calculating value of bribes government should exclude value accruing to "non-

public officials"). For the very same reasons, the $3,834.55 payment to DeBenedetti provided no cognizable value to Mr. Goldstein under § 2C1.1.[1]

**2. The government has not accounted for any offsets to RMSCO's payments to Goldstein's divorce lawyer and father.**

Following the Somma-to-RMSCO payments, RMSCO made two payments for the benefit of Mr. Goldstein—a $7,000 payment to his divorce lawyer and a $3,000 payment to his father. *See* DX575 at 9, 37 (RMSCO bank records). Because these payments were intended to cover expenses in connection with services that were not corrupt (business travel on behalf of RMSCO), the entire amounts should be excluded as an offset. *See* Section I.A *supra* (citing cases). Even if the government were to argue that the offset should be more limited, the government has not accounted for the offsetting legitimate value that Mr. Goldstein provided to RMSCO. There should be an offset because Mr. Goldstein had incurred business expenses on behalf of RMSCO, and had done work for RMSCO without compensation. The cognizable value to Mr. Goldstein of the two payments totaling $10,000 was far less than $10,000.

**3. The October 19, 2015 and May 13, 2016 payments also should be excluded for the reasons set forth in Section II.**

The $20,000 and $10,000 payments from Somma to RMSCO also should be excluded from the § 2C1.1(b)(2) calculation for the reasons stated with respect to the application of U.S.S.G. § 2C1.1(b)(1). *See* Section II *infra.*

---

[1] To the extent the government argues that Mr. Goldstein received value by virtue of his 20% ownership interest in RMSCO, it bears the burden of proving the amount by which the value of his ownership units increased. It cannot satisfy this burden because, by any measure, his ownership units had little to no value. Indeed, as the Court found, the evidence, in the light most favorable to the government, showed that RMSCO's "beef import business . . . did not materialize." ECF 181 at 5; *see also id.* at 27 (stating that "it became increasingly clear that RMSCO was going nowhere"). In any event, Mr. Goldstein received no cognizable value because the payments were for legal services that were not corrupt.

### D. Somma Separated from RMSCO and Made a Payment Intended to Cover RMSCO's Outstanding Expenses.

Somma ultimately separated from RMSCO, and the parties negotiated the separation terms with the assistance of Shutts, formally documenting the separation in a Unanimous Written Consent (the "Separation Agreement"). *See* DX535 (Separation Agreement); Tr. 1759:20-1760:15 (Travis) (describing Shutts' work on separation). The Separation Agreement provided that Somma would make a payment of $66,670.39 to RMSCO. *See* DX535 at 7 (Separation Agreement). This payment was intended to cover RMSCO's outstanding legal and travel expenses. *See, e.g.*, GX593 at 1 (email referencing "final transfer amount to satisfy expense remaining reimbursement and full outstanding balance owed to Shutts"); DX527 (email attaching Shutts invoice); GX530 (estimated travel expenses).[2] Shutts understood that the payment was intended to cover its outstanding invoices, and it expected to receive a payment covering its invoices. *See, e.g.*, DX527 (email seeking outstanding invoice from Shutts to finalize Separation Agreement); DX540 at 2 (email from Shutts asking whether Somma made the payment "for the legal fees").

The Separation Agreement also provided that RMSCO would release Somma from its non-compete. *See* DX535 at 8 ("RMSCO waives its rights under Section 15.2 of the LLC Agreement exclusively with respect to Somma[.]"); GX37 at 37 (RMSCO LLC Agreement, Section 15.2 "Non-Compete Covenant"). RMSCO thereby provided valuable consideration to Somma.

[2] Mr. Goldstein's expense estimate did not include any expenses for the 2016 trips, and included expenses for a November 2015 trip to Poland that was planned but did not happen. *See id.*

**E. The Government Has Not Proven That the Payment to RMSCO on December 8, 2016 Provided $66,670.39 in Value to Goldstein.**

The $66,670.39 payment from Somma to RMSCO on December 8, 2016 should be excluded from the § 2C1.1(b)(2) calculation largely for the same reasons the prior $30,000 in payments to RMSCO should be excluded.

**1. Somma made the payment to RMSCO, not Goldstein.**

Somma made the payment to RMSCO, not to Mr. Goldstein. The vast majority of the $66,670.39 payment was intended to cover the $57,284.19 that RMSCO owed to Shutts. *See* DX527 (Shutts invoice). Because that amount was intended for Shutts and not for Mr. Goldstein, and to cover services that were not corrupt, the entire amount should be excluded as an offset. *See* Section I.A *supra* (citing cases).[3] The remainder of the payment was intended to cover estimated expenses RMSCO owed to Mr. Goldstein. This amount should be excluded under the same reasoning.

**2. The government has not quantified RMSCO's payments for Goldstein's personal expenses or accounted for any offsets.**

The PSR correctly notes that following Somma's separation from and payment to RMSCO, RMSCO made some payments for the benefit of Mr. Goldstein, but the government has not quantified the amount. Nor has the government accounted for any offsets. There should be offsets because the payment from Somma to RMSCO was intended to cover its legitimate expenses, and

---

[3] After Somma made the December 8 payment to RMSCO to cover the full outstanding balance of the Shutts fees, Mr. Goldstein, unbeknownst to Messrs. Iler, Turley and Twomey, arranged with Shutts to pay most of the outstanding invoice and defer the remainder to a later date. *See* DX540. On December 16, 2016, RMSCO wired $30,000 to Shutts. *See* GX903 at 5 (RMSCO bank records). Shutts, therefore, effectively loaned RMSCO $27,284.19, another reason this amount should not be included in the value of the bribe calculation. Shutts, not the defendants, provided that value. RMSCO wired another $3,000 to Shutts on June 22, 2017. *See id.* at 34.

Mr. Goldstein had done work for RMSCO without compensation. In addition, RMSCO transferred substantial value to Somma by releasing it from the non-compete.

**F. An Increase Under U.S.S.G. §§ 2C1.1(b)(2) & 2B1.1(b)(1) Would Substantially Overstate the Seriousness of the Offense.**

If, notwithstanding the arguments above, the Court determines that an increase under U.S.S.G. §§ 2C1.1(b)(2) & 2B1.1(b)(1) is warranted, the Court should depart or vary downwards. The Sentencing Guidelines recognize the there may be cases where the offense level determined by reference to the fraud guideline "substantially overstates the seriousness of the offense," thereby justifying a downward departure. *See* U.S.S.G. § 2B1.1 cmt. n.21(C). The proposed eight-level increase here is driven by Section 2C1.1(b)(2)'s cross reference to the loss table in the fraud guideline, and an eight-level increase, indeed any increase, would substantially overstate the seriousness of the offense.

Courts have recognized the draconian impact on advisory sentencing ranges of the fraud guideline's loss table, and the disconnect with the seriousness of the offense. *See, e.g.*, *United States v. Corsey*, 723 F.3d 366, 379 (2d Cir. 2013) (Underhill, J., concurring) (stating that because "loss guideline . . . was not developed by the Sentencing Commission using an empirical approach based on data about sentencing practices," sentencing courts "can and should exercise their discretion when deciding whether or not to follow the sentencing advice that guideline provides"). This probably explains, in part, why courts in the Second Circuit routinely vary downwards in imposing sentences determined by reference to the fraud guideline, including in cases governed by Section 2C1.1. *See* Twomey Sentencing Memorandum, Section I.

A downward departure or variance is particularly appropriate in this case because of the nature of the payments at issue:

- The majority of the payments Somma made were not intended to go to Mr. Goldstein, but to law firms that provided legal services to RMSCO when Somma was the 60% owner. Because it was intended for $12,588.45, *see* DX575 at 9, and $57,284.19 to be paid to Shutts, *see* DX527, and for $3,834.55 to be paid to DeBenedetti, DX575 at 41, using those amounts to enhance the sentences would substantially overstate the seriousness of the offense.
- The remaining payments Somma made were intended to cover estimated business expenses incurred on behalf of RMSCO when Somma was the 60% owner. Using these amounts to enhance the sentences also would overstate the seriousness of the offense.
- The government itself recognized (at least implicitly) that there may have been legitimate reasons for the payments, independent of any corrupt intent. *See, e.g.*, ECF 98 at 20 n.11 ("[A] corrupt payment may also have dual purposes."); Tr. (06/26/23) at 2206:15-18 ("The evidence shows that the SOMMA defendants invested in Range Meats, ***in part***, because they believed that their investments would influence Goldstein . . . ." (emphasis added)). It is the government's burden at sentencing to prove the value of the corrupt payments.
- Mr. Goldstein's role at RMSCO was the opposite of a no-show job. It was a no-pay job. He rendered substantial services to RMSCO without receiving compensation. He also incurred expenses on behalf of RMSCO which, if not credited under the offense-level calculation, should be credited with a departure or variance.

The irrational impact of the loss table is underscored by the difference between Somma's $96,670 payments and a $95,000 cash bribe paid to a government official in exchange for a contract. The

former, if the PSR's calculation is accepted, would result in an eight-level increase. The latter would result in only a six-level increase.

## II. The Proposed Two-Level Enhancement Under U.S.S.G. § 2C1.1(b)(1) Should Not Apply.

The PSR proposes a two-level enhancement under U.S.S.G. § 2C1.1(b)(1) based on a determination that the offense involved more than one bribe or extortion. *See, e.g.*, Twomey PSR ¶ 92. The PSR identifies "three bribes/extortions," including (1) "a $10,000 payment to RMSCO (to Goldstein) on May 13, 2016, to fast-track the approval of the Range Meats beef burger and Chickentopia chicken tenders" and (2) "a $20,000 payment to RMSCO (to Goldstein) on October 19, 2015, in furtherance of SOMMA drumsticks being placed on the menu twice monthly." *Id.* ¶ 67. Because these payments were time barred, they were not alleged to constitute the basis for the substantive bribery counts. *See* ECF 45 ¶¶ 30, 35, 37. The jury's general verdict, therefore, did not determine whether these payments were bribes.

The government abandoned at trial the argument that the $10,000 payment was a bribe to fast-track/approve chicken tenders or the burger, presumably because there was no evidence that it was. With respect to the $20,000 payment, the Court did not instruct the jury that placing the drumsticks on the menu twice monthly was one of the official actions at issue. *See* ECF 157 at 26. The verdict, therefore, cannot be interpreted as finding a $20,000-for-menuing-drumsticks-twice-a-month exchange. Although the Court's decision on the motion for judgment of acquittal may have accepted that the evidence, in the light most favorable to the government, showed such an exchange, we respectfully submit that the evidence does not support a sentencing enhancement.

### A. The Government Did Not Prove, and Indeed Abandoned the Argument, that the $10,000 Payment to RMSCO on May 13, 2016 Was a Bribe to Fast-Track/Approve Somma's Chicken Tenders or Burger.

The $10,000 payment should not be included in the "more than one bribe" analysis because there was no evidence at trial that the $10,000 payment was a bribe paid in exchange for Mr. Goldstein's fast-tracking/approving Somma's chicken tenders or burger. Mr. Goldstein did not play a decision-making role in the product and pricing approval process. The evidence showed that SchoolFood procured food products through an approved brand process that entailed several steps including: (1) solicitations to hundreds of vendors ("outreaches"); (2) written vendor submissions designed to ensure the product satisfied nutritional requirements; and (3) taste tests. *See, e.g.*, Tr. 1028:9-1029:10 (O'Brien). Once a product met SchoolFood's requirements and received its approval, the Division of Contracts and Purchasing ("DCP") had to approve the product's pricing. *See, e.g.*, Tr. 409:15-21 (Davis); Tr. 1029:11-18 (O'Brien). Mr. Goldstein did not have supervisory authority over DCP. *See, e.g.*, Tr. 410:7-8 (Davis).

#### 1. Somma's chicken tenders

Although the Superseding Indictment alleged that the $10,000 was in exchange for Mr. Goldstein's fast-tracking/approving the chicken tenders, *see* ECF 45 ¶ 19, the government abandoned this argument at trial because there was no evidence of such an exchange. The evidence instead showed that SchoolFood, not Mr. Goldstein, fast-tracked the chicken tender outreach, *see* DX397 (fast-track outreach issued by SchoolFood personnel), and determined that Somma's chicken tenders met SchoolFood requirements, *see* DX477 (SchoolFood personnel forwarding approved submission). The evidence also showed that DCP, not Mr. Goldstein, approved the pricing of Somma's chicken tenders. *See* DX481 (email confirming DCP pricing approval). The government presented no evidence that Mr. Goldstein was involved in fast-tracking or approving the chicken tenders. Because proof of an illicit exchange was so entirely lacking,

- the government did not mention the alleged exchange in closing;
- the government omitted the alleged exchange from its closing demonstrative of official actions, *see* ECF 163 at 191; and
- the government did not dispute in post-trial briefing that it had abandoned the allegation, *see* ECF 166-1 at 29; ECF 169; ECF 171 at 1 ("The failure of the government's opposition to defend the insinuation in the Superseding Indictment that the Somma defendants agreed to transfer $10,000 to RMSCO in May 2016 in exchange for Goldstein's fast tracking and approval of Somma's chicken tenders . . . confirms that it has abandoned this baseless allegation.").

Having abandoned the allegation, and having failed to present evidence proving the alleged *quid pro quo* exchange, the government cannot now enhance the offense level by two levels based on this allegation.

**2. Somma's grass-fed burger**

The government similarly abandoned the argument about Somma's burger because it had no proof. The Affidavit in support of the Complaint suggested that the $10,000 payment was in exchange for Mr. Goldstein's fast-tracking/approving the burger, *see* ECF 1 ¶¶ 53-54, but the government abandoned that argument when it returned the Indictment and Superseding Indictment. Nor was there any evidence or argument at or after trial that Mr. Goldstein fast-tracked/approved the burger in exchange for the $10,000. To the contrary, SchoolFood fast-tracked the grass-fed burger outreach, *see* GX647 (fast-track outreach issued by SchoolFood personnel), and determined that Somma's burger met SchoolFood requirements, *see* GX497 (email from SchoolFood personnel notifying Somma that burger met requirements). The government presented no evidence that Mr. Goldstein took these official actions. And DCP did not approve

the pricing of the Somma burger; it only approved the pricing of a lower-priced burger offered by Don Lee, a Somma competitor. *See* DX466 (DCP email approving only lower-priced Don Lee burger). Plainly, this abandoned and unproven allegation cannot be used to impose a more severe sentence.[4]

### B. The Court Did Not Instruct the Jury on an Allegation that the $20,000 Payment to RMSCO on October 19, 2015 Was a Bribe to Menu Drumsticks Twice a Month, and the Government Did Not Prove Such an Allegation.

Defendants acknowledge that the Court, in its written decision on the post-trial motion for judgment of acquittal, may have accepted this alleged *quid pro quo*, *see* ECF 181 at 29-31, but we respectfully submit that it should not be included in the § 2C1.1(b)(1) calculation.

First, the Superseding Indictment did not allege that the $20,000 payment was a bribe paid in exchange for Mr. Goldstein's placing the drumsticks on the menu twice monthly, *see* ECF 45, and the Court in its jury instructions itemized the alleged official actions at issue, without including placing the drumsticks on the menu twice monthly, *see* ECF 157 at 26. Because the jurors are presumed to have followed the Court's instructions, the verdict cannot be interpreted as a finding by the jury that the government proved this *quid pro quo*.

Second, the government did not prove by a preponderance of the evidence that Mr. Goldstein took official action to menu the drumsticks twice a month. The evidence demonstrated that SchoolFood independently decided to menu drumsticks twice a month, and after SchoolFood had made the decision already, Mr. Goldstein flagged the issue, without pressuring anyone at SchoolFood to do anything. The evidence showed that Mr. Turley emailed Mr. Goldstein on October 12, 2015 stating that "We NEED to make sure we are on all menus 2x per month. With

---

[4] Because the government did not prove this $10,000 bribe, the payment should not be included in the calculation of the value to Mr. Goldstein under § 2C1.1(b)(2) as discussed in Section I *supra*.

the 'rush' ('we're out of chicken') of this project and then delay until Jan, we had had to re-negotiate with our chicken producer. As you know it is a tricky proposition when you are doing projections with live animals. We NEED the volume to make sure we keep our supply." GX332. Mr. Goldstein forwarded the email to Stephen O'Brien (SchoolFood) and added, "If doable, we should do." *Id.* Mr. O'Brien responded that SchoolFood had already scheduled the drumsticks for two menu dates per month and would let Somma know "this week." *Id.* Mr. O'Brien did not testify that he felt pressured by Mr. Goldstein to do anything, and Mr. Goldstein's mild email, on its face, did not constitute "pressure on [O'Brien] to perform an 'official act,'" as required by *McDonnell v. United States*, 579 U.S. 550, 574 (2016).

Third, there was not any direct evidence at trial linking the $20,000 payment to SchoolFood's decision to menu the drumsticks twice a month. The only evidence of a link was temporal proximity—the $20,000 payment to RMSCO was made a week after Mr. Turley's email. That proximity does not prove a *quid pro quo*, however, because although Somma's $20,000 payment to RMSCO occurred on October 19, 2015, Somma had agreed to make the payment long before, in August 2015. DX278 at 2 (August 2015 email referencing plan to make $20,000 payment "to cover first legal bill and some T&E expenses").[5]

## III. The Proposed Two-Level Enhancement Under U.S.S.G. § 3C1.1 Should Not Apply to Messrs. Goldstein and Twomey.

The two-level enhancement under U.S.S.G. § 3C1.1 should not apply because the government did not prove that Mr. Goldstein or Mr. Twomey willfully obstructed justice. The PSR simply states that they testified, were convicted, and therefore committed perjury. *See, e.g.*,

[5] Because the government did not prove this $20,000 bribe, the payment should not be included in the calculation of the value to Mr. Goldstein under § 2C1.1(b)(2) as discussed in Section I *supra*.

Twomey PSR ¶ 87. Even assuming that the Guideline commentary could expand the plain language of § 3C1.1 to include perjury, the PSR does not identify any allegedly perjurious statement. *See, e.g.*, *United States v. Dunnigan*, 507 U.S. 87, 95 (1993). Moreover, the Second Circuit imposes rigid requirements to ensure that "courts will not automatically enhance sentences whenever the accused takes the stand and is thereafter found guilty." *United States v. Rosario*, 988 F.3d 630, 632-33 (2d Cir. 2021) (per curiam) (citation omitted). "[B]efore imposing the adjustment, the district court must find that the defendant consciously acted with the purpose of obstructing justice," *United States v. Agudelo*, 414 F.3d 345, 349 (2d Cir. 2005) (citation and alterations omitted), and the "intent to obstruct must be unambiguous," *United States v. Pena*, 751 F.3d 101, 105 (2d Cir. 2014). The record does not support such a finding.

**CONCLUSION**

For the reasons set forth above, the proposed enhancements under U.S.S.G. §§ 2C1.1(b)(1), 2C1.1(b)(2) & § 3C1.1 should not apply.

Dated: August 2, 2024

Respectfully submitted,

FEDERAL DEFENDERS OF NEW YORK

Kannan Sundaram
One Pierrepont Plaza – 16th Floor
Brooklyn, NY 11201
kannan_sundaram@fd.org

Neil P. Kelly
52 Duane Street – 10th Floor
New York, NY 10007
Tel: (212) 417-8700
neil_kelly@fd.org

*Attorneys for Eric Goldstein*

WILLIAMS & CONNOLLY LLP

By: */s/ Tobin J. Romero*
Brendan V. Sullivan, Jr. (admitted *pro hac vice*)
Tobin J. Romero
Amy Mason Saharia (admitted *pro hac vice*)
Zachary K. Warren (admitted *pro hac vice*)
Patrick J. Looby (admitted *pro hac vice*)
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029
tromero@wc.com

*Attorneys for Brian Twomey*

ZUCKERMAN SPAEDER LLP

Aitan D. Goelman
Daniel A. Braun (admitted *pro hac vice*)
1800 M Street NW, Suite 1000
Washington, DC 20036-5807
Tel: 202.778.1800
Fax: 202.822.8106
agoelman@zuckerman.com
dbraun@zuckerman.com

Leila Bijan
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: 212.704.9600
Fax: 212.704.4256
lbijan@zuckerman.com

*Attorneys for Michael Turley*

VINSON & ELKINS LLP

James G. McGovern
Samuel Rackear
114 Avenue of the Americas
32nd Floor
New York, NY 10036
212.237.0000 (Telephone)
212.237.0100 (Fax)
jmcgovern@velaw.com
srackear@velaw.com

*Attorneys for Blaine Iler*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on August 2, 2024, I caused a copy of the foregoing to be filed electronically with the Court using the Court's CM/ECF system, which will transmit a notice of electronic filing to all counsel of record in this action.

*/s/ Tobin J. Romero*
Tobin J. Romero
WILLIAMS & CONNOLLY LLP